UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

YATRAM INDERGIT, on behalf of
himself and all others similarly situated,

        Plaintiff,

    -against-

RITE AID CORPORATION, RITE AID
OF NEW YORK, INC., and FRANCIS
OFFOR as Aider & Abettor,

        Defendants.

**MEMORANDUM DECISION
AND ORDER**

08 Civ. 9361 (PGG)

ANGEL NAULA and JOSE FERMIN, on
behalf of themselves and all others
similarly situated,

        Plaintiffs,

    -against-

RITE AID OF NEW YORK d/b/a RITE
AID, RITE AID CORPORATION and
JOHN DOES 1 through 100, inclusive,

        Defendants.

08 Civ. 11364 (PGG)

PAUL G. GARDEPHE, U.S.D.J.:

      In this putative collective and class action[1], Plaintiff Yatram Indergit

asserts claims under the Fair Labor Standards Act ("FLSA"), 29 U.S.C. §§ 201 et seq.,

and the New York Labor Law ("NYLL"), §§ 650 et seq., on behalf of himself and all

---

[1] On March 23, 2010, this action was consolidated with a related action – Naula v. Rite
Aid Corp. and Rite Aid of New York Inc., 08 Civ. 11364 (PGG) (S.D.N.Y.) – for all
purposes. [Docket No. 91]  The Naula plaintiffs assert New York Labor Law claims for
overtime compensation on behalf of all similarly situated Rite Aid managers and assistant
managers.

others similarly situated, for failure to pay overtime compensation. Plaintiff also asserts individual claims for age discrimination under the Age Discrimination in Employment Act, 29 U.S.C. §§ 621 et seq. ("ADEA"), the New York State Human Rights Law, Executive Law §§ 290 et seq. ("NYSHRL"), and the New York City Human Rights Law, N.Y.C. Admin. Code §§ 8-107 et seq. ("NYCHRL"), and for retaliation under the NYLL and FLSA. Plaintiff seeks, for himself and others similarly situated, monetary damages and injunctive relief.

Rite Aid Corporation and Rite Aid of New York, Inc. (collectively "Rite Aid") have moved for summary judgment on Plaintiff's claims for overtime pay under the FLSA, for retaliation under the FLSA and the NYLL, and for injunctive relief under the FLSA and the NYLL.

Defendants argue that Plaintiff's FLSA claim fails because he was an exempt employee under the FLSA. Defendants further contend that Plaintiff never made any formal complaints under the FLSA or the NYLL and that he is therefore barred from bringing retaliation claims under these statutes. Finally, Defendants argue that Plaintiff, as a former employee, may not seek injunctive relief.

For the reasons set forth below, Defendants' motion is GRANTED as to Plaintiff's FLSA and NYLL retaliation claims. To the extent that Plaintiff seeks injunctive relief for himself, that claim is likewise dismissed. Defendants' motion for partial summary judgment is otherwise DENIED.

## **BACKGROUND**

Rite Aid hired Plaintiff Yatram Indergit as a store manager in 1979, and he went on to spend most of his professional career working at a Rite Aid store in White

Plains, New York.  (Amended Cmplt. ¶ 45)  On November 30, 2007, Rite Aid fired

Indergit.  (Id.)

Indergit's Amended Complaint includes a class action claim based on

alleged violations of the NYLL; a collective action claim under the FLSA; and individual

claims relating to age discrimination.  (Id. ¶¶ 57-77)  Indergit's class action claims under

the NYLL are based on Rite Aid's alleged failure to pay overtime compensation to its

store managers and assistant store managers.  Indergit's collective action claims pursuant

to the FLSA are based on Rite Aid's failure to pay overtime compensation to its store

managers.[2]

Indergit claims that Rite Aid – as part of a program to reduce the amount

of overtime compensation paid to non-exempt employees – has a policy of requiring store

managers and assistant store managers to work overtime to perform the duties of non-

exempt employees, such as cashiers and stock handlers.  (Id. ¶¶ 37, 38)  Indergit further

alleges that Rite Aid managers and assistant managers are required "to work up to 80

hours a week and/or six or seven days a week" "to make up all the hours previously

worked by non-exempt employees."  (Id. ¶ 38)  According to Indergit, Rite Aid does not

pay its managers overtime compensation as required by the FLSA and the NYLL.  (Id. ¶

42)

---

[2] Indergit originally asserted a collective action claim under the FLSA for both managers
and assistant managers, but in a December 9, 2009 letter he withdrew his FLSA claim for
assistant managers.  [Docket No. 90].

# I.    **PROCEDURAL HISTORY**

Defendants served their motion for partial summary judgment on June 8,

2009. [Docket No. 71]

Under this Court's original Joint Case Management Plan and Scheduling

Order, the parties were scheduled to complete depositions of fact witnesses and all fact

discovery by October 9, 2009. [Docket No. 16 (Joint Case Management Plan and

Scheduling Order), at ¶¶ 8, 10]  The Court subsequently granted the parties' request to

extend the fact discovery deadline to November 9, 2009 [Docket No. 80], and later

further extended the fact discovery deadline to January 8, 2010 [Docket No. 84].  The

parties then requested an additional ninety-day extension. [Docket No. 86]  Discovery is

currently set to close on April 8, 2010.

Defendants argue that they are entitled to summary judgment on Plaintiff's

FLSA claim for unpaid overtime wages because Indergit falls within the executive

exemption of the FLSA:

> Plaintiff's testimony confirms that he was unquestionably in charge of the
> store, disciplined employees, interviewed employees, trained employees,
> scheduled employees, performed office work such as payroll and financial
> data, and managed the store's inventory. . . . Plaintiff admits that during
> the relevant time period, he was at all times responsible for the day-to-day
> supervision, development and evaluation of at least eight to sixteen
> employees within his Store. . . . Plaintiff further admits that, at a
> minimum, his recommendations regarding hiring, firing and changes in
> employment status of his subordinate employees were followed. . . . He
> also admits that he was paid a salary in excess of that required to qualify
> for the FLSA's executive exemption. . . .For all of these reasons, Rite Aid
> properly classified Plaintiff as an exempt executive, as he has no FLSA
> claim for overtime pay.

(Def. Br. 2)

A review of the record, however, including the parties' Rule 56.1 statements, reveals that material issues of fact remain as to whether Plaintiff was properly classified as an exempt executive employee. Moreover, because Defendants filed their motion early in the discovery process, the Court does not have an adequate factual record before it to determine whether Plaintiff was properly classified.

## DISCUSSION

## I. SUMMARY JUDGMENT STANDARD

Summary judgment is warranted where the moving party shows that "there is no genuine issue as to any material fact" and that it "is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). "A dispute about a 'genuine issue' exists for summary judgment purposes where the evidence is such that a reasonable jury could decide in the non-movant's favor." Beyer v. County of Nassau, 524 F.3d 160, 163 (2d Cir. 2008). In deciding a summary judgment motion, the Court "resolve[s] all ambiguities, and credit[s] all factual inferences that could rationally be drawn, in favor of the party opposing summary judgment." Cifra v. Gen. Elec. Co., 252 F.3d 205, 216 (2d Cir. 2001). "The party seeking summary judgment bears the burden of establishing that no genuine issue of material fact exists and that the undisputed facts establish her right to judgment as a matter of law." Rodriguez v. City of New York, 72 F.3d 1051, 1060-61 (2d Cir.1995)

"Mere conclusory statements, conjecture or speculation" by the plaintiff will not defeat a summary judgment motion. Gross v. National Broad. Co., Inc., 232 F. Supp. 2d 58, 67 (S.D.N.Y. 2002). Instead, the plaintiff must offer "concrete particulars."

Bickerstaff v. Vassar Coll., 196 F.3d 435, 451-52 (2d Cir. 1999) (disregarding plaintiff's Rule 56(e) affidavit because it lacked "concrete particulars").

"The Second Circuit has held that 'summary judgment should only be granted if "after discovery, the nonmoving party has failed to make a sufficient showing on an essential element of [its] case with respect to which [it] has the burden of proof."'" Behzadi & Brenjian Carpet v. David & Son Oriental Antique Rugs Corp., No. 07 Civ. 7073 (BSJ), 2009 WL 773312, at *2 (S.D.N.Y., Mar. 19, 2009) (quoting Miller v. Wolpoff & Abramson, L.L.P., 321 F.3d 292, 303 (2d Cir.2003) (quoting Hellstrom v. United States Dep't of Veterans Affairs, 201 F.3d 94, 97 (2d Cir.2000))) (alterations in original). Therefore, "[o]nly in the rarest of cases may summary judgment be granted against a plaintiff who has not been afforded the opportunity to conduct discovery." Miller, 321 F.3d at 303-04 (quoting Hellstrom, 201 F.3d at 97) (internal quotation marks omitted).

Accordingly, "[t]he burden on the moving party is greater in cases where discovery is incomplete." Saffire Corp. v. Newkidco., LLC, 286 F. Supp. 2d 302, 306 (S.D.N.Y. 2003); see also Park Ave. Bank, N.A. v. Bankasi, No. 93 Civ. 1483, 1995 WL 739514, at *1 (S.D.N.Y. Dec. 13, 1995) ("Summary judgment is strongly disfavored prior to the parties having had an adequate opportunity for discovery.").

This is not one of the "rarest of cases" in which it is appropriate to dismiss plaintiff's claim based on information obtained at the outset of discovery.

## II.    LEGAL ANALYSIS

### A.    The FLSA Overtime Claim

Defendants contend that "Plaintiff's own testimony conclusively establishes that he falls squarely within the executive exemption" of the FLSA, because he admitted at his deposition that he was "unquestionably in charge of the store, disciplined employees, interviewed employees, trained employees, scheduled employee hours, performed office work such as payroll and financial data, and managed the store's inventory."  (Def. Br. 1)

Plaintiff argues, however, that his "job responsibilities were identical for the most part with those of nonexempt employees, because Defendant[s] reassigned those employees' responsibilities to Plaintiff and other so-called 'managers' and 'assistant managers'. . . ."  (Pltf. Br. 2)  Plaintiff further contends that Defendants' motion for summary judgment is premature because Defendants "filed this motion well before the close of fact discovery and after only brief discovery has been permitted with respect to conditional certification as provided by the Scheduling Order."  (Pltf. Br. 1)

### 1.    The Executive Exemption

The FLSA requires that employers pay their employees time-and-a-half after the employee has worked more than 40 hours during a work week.  29 U.S.C. § 207(a)(1).  Employers do not have to pay time-and-a-half, however, to individuals "employed in a bona fide executive, administrative, or professional capacity."  29 U.S.C. § 213(a)(1).

Congress did not further define these exemptions in the FLSA, but instead delegated this responsibility to the Department of Labor.  Id.  Because the executive exemption is an affirmative defense to overtime pay claims, the employer bears the

burden of proving that a plaintiff has been properly classified as an exempt employee.

See Corning Glass Works v. Brennan, 417 U.S. 188, 196-97 (1974); Clougher v. Home

Depot U.S.A., Inc., No. 06 Civ. 5474 (RRM), 2010 U.S. Dist. LEXIS 24238, at *9-10 n.4

(E.D.N.Y. Mar. 11, 2010) ("In the context of overtime wage claims. . .application of the

'executive exemption' is an affirmative defense, which any defendant employer bears the

burden of proving by a preponderance of the evidence (citing Bilyou v. Dutchess Beer

Distribs., Inc., 300 F.3d 217, 222 (2d Cir. 2002)).  "[B]ecause the FLSA is a remedial act,

its exemptions, such as the 'bona fide executive' exemption . . . are to be narrowly

construed."  Martin v. Malcolm Pirnie, Inc., 949 F.2d 611, 614 (2d Cir. 1991).

Department of Labor regulations set forth the following requirements for

application of the executive exemption:

> (1) [The employee is] [c]ompensated on a salary basis at a rate of not less
> than $455 per week (or $ 380 per week, if employed in American Samoa
> by employers other than the Federal Government), exclusive of board,
> lodging or other facilities;
>
> (2) [The employee's] primary duty is management of the enterprise in
> which the employee is employed or of a customarily recognized
> department or subdivision thereof;
>
> (3) [The employee] customarily and regularly directs the work of two or
> more other employees; and
>
> (4) [The employee] has the authority to hire or fire other employees or [the
> employee's] suggestions and recommendations as to the hiring, firing,
> advancement, promotion or any other change of status of other employees
> are given particular weight.

29 C.F.R. § 541.100(a).[3]  Here, there is no dispute that Plaintiff was paid on a salary

basis at a rate greater than $455 per week, and that he customarily and regularly directed

the work of two or more other employees.  The parties dispute, however, whether

Plaintiff's "primary duty" was "management of the enterprise."  (Def. Br. 7-15; Pltf. Br.

20-23)

Department of Labor regulations define "primary duty" – as used in

§ 541.100(a)(2) – as follows:

> (a) To qualify for exemption under this part, an employee's "primary
> duty" must be the performance of exempt work. The term "primary duty"
> means the principal, main, major or most important duty that the employee
> performs. Determination of an employee's primary duty must be based on
> all the facts in a particular case, with the major emphasis on the character
> of the employee's job as a whole. Factors to consider when determining
> the primary duty of an employee include, but are not limited to, the
> relative importance of the exempt duties as compared with other types of
> duties; the amount of time spent performing exempt work; the employee's
> relative freedom from direct supervision; and the relationship between the
> employee's salary and the wages paid to other employees for the kind of
> nonexempt work performed by the employee.

> (b) The amount of time spent performing exempt work can be a useful
> guide in determining whether exempt work is the primary duty of an
> employee. Thus, employees who spend more than 50 percent of their time
> performing exempt work will generally satisfy the primary duty
> requirement. Time alone, however, is not the sole test, and nothing in this
> section requires that exempt employees spend more than 50 percent of
> their time performing exempt work. Employees who do not spend more
> than 50 percent of their time performing exempt duties may nonetheless
> meet the primary duty requirement if the other factors support such a
> conclusion.

> (c) Thus, for example, assistant managers in a retail establishment who
> perform exempt executive work such as supervising and directing the

---

[3]  The regulations were amended in 2004.  The pre-2004 regulations do not apply to this
action because Plaintiff has agreed that his FLSA claim is limited to the period between
October 31, 2005 and the present. [Docket No. 36 (May 4, 2009 Memorandum Decision
and Order), at 4]

work of other employees, ordering merchandise, managing the budget and authorizing payment of bills may have management as their primary duty even if the assistant managers spend more than 50 percent of the time performing nonexempt work such as running the cash register.  However, if such assistant managers are closely supervised and earn little more than the nonexempt employees, the assistant managers generally would not satisfy the primary duty requirement.

29 C.F.R. § 541.700 (emphasis added).

Determining whether an employee is exempt from the overtime requirements is a highly fact-intensive inquiry that is "'to be made on a case-by-case basis in light of the totality of the circumstances.'"  Clougher, 2010 U.S. Dist. LEXIS 24238, at *13 (quoting Johnson v. Big Lots Stores, Inc., 604 F. Supp. 2d 903, 908 (E.D. La. 2009)); see also Barfield v. New York City Health and Hosps. Corp., 537 F.3d 132, 141-42 (2d Cir. 2008) ("[E]mployment for FLSA purposes [is] a flexible concept to be determined on a case-by-case basis by review of the totality of the circumstances"); Schwind v. EW & Assocs., 357 F. Supp. 2d 691, 703 (S.D.N.Y. 2005) ("Whether an employee is exempt from the overtime pay provisions is a 'fact intensive inquiry.'") (quoting Kahn v. Superior Chicken & Ribs, Inc., 331 F. Supp. 2d 115, 118 (E.D.N.Y. 2004)).

Furthermore, "'[d]isputes regarding the nature of an employee's duties are questions of fact.'"  Hendricks v. J.P. Morgan Chase Bank, N.A., No. 08 Civ. 613 (JCH), 2009 U.S. Dist. LEXIS 117374 at *14 (D. Conn. Dec. 15, 2009) (quoting Jarrett v. ERC Properties, Inc., 211 F.3d 1078, 1081 (8th Cir. 2000)); see also Icicle Seafoods, Inc. v. Worthington, 475 U.S. 709, 714 (1986) ("The question of how the respondents spent their working time . . . is a question of fact.").

## 2.     Genuine Issues of Material Fact
### Preclude Summary Judgment

Defendants' motion for partial summary judgment is premised upon Plaintiff's deposition testimony, which Defendants argue "conclusively establishes that he falls squarely within the executive exemption." (Def. Br. 1)  Defendants contend that Plaintiff testified that while serving as a manager at Rite Aid he:

> Scheduled employees . . . ; reviewed and approved employees' time punches and ensured the accuracy of payroll . . . ; developed and trained employees and assisted them with any questions they had . . . ; evaluated employees . . . ; motivated employees . . . ; disciplined and addressed performance issues with employees . . . ; assigned employees to particular jobs . . . ; . . . ran store meeting[s] . . . . determined the amount of stock to be purchased, kept track of inventory and checked in vendors . . . . conducted audits of cashiers' drawers and otherwise ensured the appropriate handling and deposit of the store's monetary funds and assets.

(Def. Br. 9-10) (citations omitted).  Defendants argue that these duties "are exactly the type of job duties the Second Circuit has previously held to be important managerial job functions."  (Def. Br. 10)  While Defendants contend that Plaintiff's deposition conclusively establishes that he "was captain of the ship" (Def. Br.10), determining whether Plaintiff was truly the "captain of the ship" or merely had that title requires "'a voyage through fact-bound waters; [a]lthough there are a great many stars of law to navigate by, the course turns on the facts of an employee's job duties.'"  Mullins v. City of New York, 523 F. Supp. 2d 339, 355 (S.D.N.Y. 2007) (quoting Harris v. District of Columbia, 741 F. Supp. 254, 259 (D.D.C. 1990)).

While it appears clear that Plaintiff performed a variety of exempt duties, the very limited record before the Court does not reveal the relative importance of these duties versus the non-exempt duties Plaintiff alleges he performed on a weekly basis,

including, inter alia, staffing the cash register and photo processor (Vagnini Aff. Ex. 21 (Indergit Aff. In Opp. To Summ. Judg.), ¶ 2), moving inventory from the back room to the retail floor or around the retail floor (id. ¶ 6), moving crates and boxes in the back room, in the stock room, or on the retail floor (id. ¶ 5), and unloading trucks for hours at a time (Vagnini Aff. Ex. 1 (Excerpts from the April 23, 2009 Deposition of Plaintiff Yatram Indergit ("Indergit Dep.")), at 245). The critical inquiry is "the relative importance of an employee's exempt duties as compared with other types of duties." 29 C.F.R. § 541.700(a). Many courts have held that resolving this difficult and intensive factual inquiry is inappropriate at summary judgment. See, e.g., Clougher, 2010 U.S. Dist. LEXIS 24238, at *18 (denying summary judgment and noting – as to the relative importance of plaintiff's exempt versus non-exempt duties – that "[t]he factual record . . . is hotly disputed, and cannot be resolved without further fact-finding"); Rubery v. Buth-Na-Bodhaige, Inc., 470 F. Supp. 2d 273, 277 (W.D.N.Y. 2007) (denying summary judgment and stating that "it is a question of fact for the jury as to whether plaintiff's primary job responsibilities could be considered managerial, thereby exempting her from the FLSA overtime requirements.").

Defendants argue that this Court should limit its inquiry concerning Plaintiff's job duties to statements he made at his deposition. Case law and Department of Labor regulations, however, indicate that the inquiry is far more complicated, and requires weighing a variety of factors and a "totality of the circumstances" approach.

For example, Defendants contend that Plaintiff testified that he was "in charge" and the "highest-ranked" employee at his store, and that "this admission alone is sufficient for the Court to find that management was Plaintiff's primary duty." (Def. Br.

9)  "[T]he words 'in charge' [or "highest ranked"] are not[, however,] a magical incantation that render an employee a bona fide executive regardless of his actual duties." Ale v. TVA, 269 F.3d 680, 691 (6th Cir. 2001); Damassia v. Duane Reade, Inc., No. 04 Civ. 8819, 2006 U.S. Dist. LEXIS 73090, at  *15 n.7 (S.D.N.Y. Oct. 4, 2006) ("The mere fact that plaintiffs' job responsibilities differ from, and are more important than, the responsibilities of stock clerks does not necessarily mean that the requirements of 29 C.F.R. § 541.100 and related provisions are satisfied.  See also 29 C.F.R. § 541.1 (2004). In other words, employees do not become bona fide executives under [the] FLSA simply because there are employees lower than them in the company's hierarchy.  It is possible that both stock clerks and assistant night managers are entitled to overtime compensation, even if assistant night managers have more authority and more responsibility than the clerks."); see also Big Lots, 604 F. Supp. 2d at 914 (denying executive exemption defense where plaintiffs sometimes served as sole managers-in-charge of their store).

Even where there has been full discovery, courts are often reluctant to grant summary judgment based on the executive exemption because of the deeply factual nature of the inquiry.  For example, in Rubery v. Buth-Na-Bodhaige, Inc., 470 F. Supp. 2d 273 (W.D.N.Y. 2007), the defendant contended that plaintiff – a manager at "The Body Shop" – was properly classified as exempt because she "ran the show," was visited infrequently by her district manager, and her pay far exceeded those she supervised.  Id. at 276.  The plaintiff, by contrast, claimed that she spent "approximately 90% of her time performing mere selling duties," that those "selling duties involved the same activities as sales associates," and that "she was largely controlled by the district sales manager and the area manager."  Id. at 277. Faced with these conflicting accounts, the court

determined that defendant "had failed to establish, as a matter of law, that [plaintiff's] primary duty was management":

> There are facts which could lead to such a conclusion, but there are other facts that indicate the contrary. To some extent, issues of credibility may be involved in the final resolution of this issue. There are questions as to what plaintiff actually did during her workday and what type of independent authority she had. In sum, I think it is a question of fact for the jury as to whether plaintiff's primary job responsibilities could be considered managerial, thereby exempting her from the FLSA overtime requirements.

Id. at 277 (citing Goldman v. RadioShack Corp., No. 03 Civ. 0032, 2006 U.S. Dist. LEXIS 2433, 2006 WL 336020, at *4 (E.D. Pa. Jan. 23, 2006) (whether primary duty was management "is unquestionably a factual question for the jury to decide."); Harris, 741 F. Supp. at 259).

Similarly, here, the incomplete nature of the record, and the parties' factual disputes concerning Plaintiff's primary job responsibilities, make it improper for this Court – at this time – to resolve Plaintiff's claims as a matter of law.

### a. Time Spent Performing Exempt Versus Non-Exempt Duties

Genuine issues of material fact exist as to how much time Plaintiff spent performing exempt versus non-exempt duties. Plaintiff contends that he spent 90% of his time performing non-exempt duties (Vagnini Aff., Ex. 21, (Indergit Affidavit in Opposition to Defendants Motion for Partial Summary Judgment, Aug. 10, 2009), at ¶ 7; Vagnini Aff., Ex. 22 (Indergit Affidavit in Support of Plaintiff's Motion for Conditional Certification Apr. 8, 2009), at ¶ 6; Indergit Dep. 403), whereas Defendants argue that "Plaintiff spent at least thirty-six (36) of the seventy (70) to eighty (80) hours he claims to have worked each week performing managerial job duties, i.e., at least 40% of his time."

(Def Br. 14); see also Def. R. 56.1 Stat. ¶¶ 38-55. Defendants' assertion is based on Plaintiff's testimony regarding the various tasks he performed during a work week and his estimate of how much time he devoted to each task. Defendants further contend – correctly – that Plaintiff cannot create a genuine issue of material fact merely by submitting a declaration or affidavit that contradicts his deposition testimony. (Def. Reply. Br. 4); see Palazzo v. Corio, 232 F.3d 38, 43 (2d Cir. 2000) ("In opposing summary judgment, a party who has testified to a given fact in his deposition cannot create a triable issue merely by submitting his affidavit denying the fact.")

Plaintiff's declaration, however, does not directly contradictory his deposition testimony – or his initial declaration – which likewise asserted the 90% figure. (Vagnini Aff. Ex. 22 (Indergit Affidavit in Support of Plaintiff's Motion for Conditional Certification , dated Apr. 8, 2009), at ¶ 6) Nowhere in his deposition testimony did Plaintiff admit that his 90% estimate was wrong. Indeed, when Plaintiff was questioned about the 90% figure, he endorsed it. (Indergit Dep. 403) While Rite Aid elicited testimony that can be used to undermine Plaintiff's 90% estimate and attack Plaintiff's credibility on this point, Plaintiff has not – contrary to Rite Aid's arguments – "acknowledge[d] that this 90% overstatement cannot be accurate" (Def. Reply Br. 3), and this issue is therefore not appropriate for summary judgment treatment at this time.[4] "To

_____

[4] The Clougher court rejected defendant's motion for summary judgment premised on the same argument:

> As indicated above, the quantitative analysis necessary to properly weigh exempt work against nonexempt work is lacking. Citing [plaintiff's] various admissions to having performed managerial tasks, Home Depot would have this Court infer that management occupied more than fifty percent of his time. [Plaintiff], however, submits a sworn declaration

the extent that there is a conflict in a witness's testimony, such a conflict affects the weight of the testimony, not its admissibility." Palazzo v. Corio, 232 F.3d 38, 43 (2d Cir. 2000) (citing United States v. Rodriguez, 968 F.2d 130, 143 (2d Cir. 1992), cert. denied, 506 U.S. 847 (1992). Moreover, "[i]t is a settled rule that '[c]redibility assessments, choices between conflicting versions of events, and the weighing of evidence are matters for the jury, not the court on a motion for summary judgment.'" McClellan v. Smith, 439 F.3d 137, 144 (2d Cir. 2006) (quoting Fischl v. Armitage, 128 F.3d 50, 55 (2d Cir. 1997)).

Accordingly, there remains a genuine issue of material fact as to how much time Plaintiff spent performing exempt versus non-exempt duties.[5] To resolve this critical factual dispute will require a more fully developed factual record, including, inter alia, testimony from Plaintiff's co-workers and supervisor.

> objecting to Home Depot's alleged mischaracterization of his testimony, and purporting to provide a fuller factual context from which this Court is to understand that his managerial role occupied no more than twenty percent of his time. . . . As an initial matter, Home Depot objects to Clougher's declaration as nakedly self-serving. But, this Court finds nothing in Clougher's Declaration that is patently inconsistent with his prior testimony, nor so incredible as to render it a sham instrument.

Clougher, 2010 U.S. Dist. LEXIS 24238, at *18, n.7.

[5] Defendants argue that "the amount of time Plaintiff spent performing 'non-exempt' duties simply does not create any issue of material fact that would preclude the Court from granting Defendants' Motion for Summary Judgment." (Def. Reply Br. 4-5) The Department of Labor's regulations state, however, that the "amount of time spent performing exempt work can be a useful guide in determining whether exempt work is the primary duty of an employee. . . ." 29 C.F.R. § 541.700(b). Moreover, "[n]o circuit courts have found management was a primary duty when the employee spent 80 to 90% of his time performing nonexempt tasks." Big Lots, 604 F. Supp. 2d at 912-13 (citations omitted). Accordingly, Plaintiff's contention that he spent 90% of his time performing non-exempt duties presents a critical issue on the question of whether he was properly classified as an exempt employee.

### b.     Scheduling Responsibilities

Defendants contend that Plaintiff admitted at his deposition that he "scheduled employees" (Def. Br. 9), and that this admission supports their argument that he was properly classified as an exempt employee.  There remains a material factual dispute concerning the extent of Plaintiff's scheduling responsibilities, however.  (Def. R. 56.1 Stat. ¶ 11; Pltf. R. 56.1 Resp. ¶ 11)  Plaintiff's testimony indicates that he created a work schedule by inputting employees' availability into "Staff Works," a computer program provided by Defendants; the computer program then created the weekly schedule.  Plaintiff also testified that he was responsible for making adjustments to the schedule when an employee did not appear for work.  (Turner Aff. Ex. A (Excerpts from the April 23, 2009 Deposition of Plaintiff Yatram Indergit ("Indergit Dep.")), at 186-87).  Whether, under these circumstances, it can be properly be said that Plaintiff controlled the scheduling of employees' time – as opposed to merely inputting information into a Company-provided computer program that generated the weekly schedule – requires a more developed factual record.[6]

### c.     Performance of Non-Exempt
### Duties by Choice or Direction

Defendants also contend that if Plaintiff performed non-exempt duties, he did that by choice rather than pursuant to Company direction.  See, e.g., Def. R. 56.1 Stat. ¶ 36 ("[i]n order to be an effective manager, Plaintiff used his managerial discretion and

---

[6]  Plaintiff's account of the scheduling process has been corroborated by testimony from another Rite Aid store manager indicating that "Staff Works" was utilized to make weekly schedules and that managers simply input employee availability into the program, which then generated the schedule.  (Vagnini Aff., Ex. 4 (Excerpt from Deposition of Masooma Hazara), at 33).

chose to help and at the same time supervise hourly employees, for example, while they unloaded the delivery truck. . . ."); (Def. Reply Br. 6) (Plaintiff "often chose to perform 'non-exempt' duties because his management style was leading by example, and he believed it made him an effective manager.")  Plaintiff disputes this contention, however, asserting that because he "had no discretion to award overtime to other employees . . . he [had] to work overtime in the photo shop or unloading trucks and crates to stock the store shelves."  Plaintiff further asserts that his supervisor – Rite Aid District Manager Offor – "instructed Plaintiff that instead of hiring or expanding the hours of other employees, Plaintiff . . . had to do the work, finish within a specified period of time, stocking shelves and carrying out the remaining workload of a Rite Aid store."  (Pltf. R. 56.1 Resp. ¶ 36; see also Indergit Dep. at 151-52, 158-59, 401)  At his deposition, Plaintiff testified that Offor instructed Plaintiff that he and his assistant manager were responsible for completing any work left undone by non-exempt workers during their allotted "straight-pay" work hours.  Offor allegedly told Plaintiff, "you got to stay there and get it done regardless."  (Indergit Dep. 152).

Whether Plaintiff's performance of non-exempt duties was mandatory or discretionary is of critical importance in deciding whether Plaintiff was correctly classified as an exempt employee.  "Generally, exempt executives make the decision regarding when to perform nonexempt duties. . . ."  29 C.F.R. § 541.106(a).  Once again, Plaintiff's deposition does not represent the sum total of evidence material to this determination.  Testimony from Plaintiff's supervisor and co-workers is likely to be

highly relevant, along with corporate records and documentation from Rite Aid.[7]

Without a more fully developed factual record, this Court cannot resolve the factual

dispute presented by the parties' contradictory assertions.[8]

### 3. Because Discovery is Not Complete, Rite Aid's Motion is Premature

In opposing Defendants' summary judgment motion, Plaintiff's counsel

submitted an affirmation indicating that discovery was not complete and specifying

information Plaintiff had requested from Defendants but not received.  [Docket No. 78

(Vagnini Aff.)]  Plaintiff's counsel's affirmation states in pertinent part:

> 4. To date, Defendants have failed to produce many documents which are necessary to Plaintiff's claims, including labor budgets, schedules, hours worked, corporate communications relating to Plaintiff's store, minutes from conference calls relating to the labor budget and assignments to management employees, pay stubs for management employees, and many other documents which relate to the corporate policies and procedures which Plaintiff has requested yet Defendant has objected to producing them.

> 5. Defendants have hindered this process by refusing to produce complete responses to interrogatories and document demands, objecting to the most relevant portions of these requests. Further, Defendants have not provided the names of individuals who have relevant information or other similarly situated individuals who hold information relevant to the ongoing litigation. In sum, Defendants have failed to respond in any meaningful way to Plaintiffs interrogatories in total. They have also failed to identify the documents which relate directly to Plaintiff's individual claims.

---

[7]  In this regard, Rite Aid's Vice President of Field Human Resources, Kristin Crandall, gave deposition testimony indicating that certain Rite Aid managers are in fact classified as non-exempt.  (Vagnini Aff. Ex. 17 (Excerpts from Deposition of Kristin Crandall, July 1, 2009), at 74).  Defendants do not address the potential relevance of as yet unproduced documents concerning Rite Aid's decision to classify certain Rite Aid managers as non-exempt, arguing instead that this Court is required to grant their summary judgment motion solely on the basis of Plaintiff's deposition testimony considered in a vacuum.

[8]  In discussing material issues of fact that remain unresolved, the Court has provided illustrative examples as opposed to an exhaustive list.

6. While not providing full answers, Defendants did provide some responses to Plaintiff's demands. They were limited in scope to Plaintiff's store and did not include many documents which relate to the greater region and corporate communications. Indeed the few corporate communications which were disclosed included nothing more than unrelated emails relating to problems within the store's daily operation. This occurred despite this portion of discovery being related specifically to conditional certification and not merely Plaintiff's claims.

7. Specifically, Defendants have not produced documents relating to how management employees, including Plaintiff, were categorized as exempt from overtime laws. This highly relevant information was deemed objectionable and Defendants only produced documents from Plaintiff's store which in no way reflected any decision making process for designating employees as exempt or non-exempt from overtime.

(Vagnini Aff. ¶¶ 4-7)

Under Fed. R. Civ. P. 56(f), "if a party opposing a summary judgment motion shows by affidavit that, for specified reasons, it cannot present facts essential to justify its opposition, the court may, <u>inter alia</u>, deny the summary judgment motion or order a continuance to allow the opposing party to obtain affidavits, take depositions, or conduct other discovery that is material to its opposition to the motion." <u>See</u> <u>In re Dana Corp.</u>, 574 F.3d 129, 148 (2d Cir. 2009) (citing Fed. R. Civ. P. 56(f)). "Rule 56(f) applications are for summary judgment motions made before discovery has concluded." <u>Little v. City of New York</u>, 487 F. Supp. 2d 426, 436 (S.D.N.Y. 2007) "To request discovery under Rule 56(f), a party must file an affidavit describing: (1) what facts are sought and how they are to be obtained; (2) how these facts are reasonably expected to raise a genuine issue of material fact; (3) what efforts the affiant has made to obtain them; and (4) why the affiant's efforts were unsuccessful." <u>Gualandi v. Adams</u>, 385 F.3d 236, 244 (2d Cir. 2004) (citing <u>Hudson River Sloop Clearwater, Inc. v. Dep't of the Navy</u>, 891 F.2d 414, 422 (2d Cir. 1989)).

"[A] party against [whom] summary judgment is sought must be afforded 'a reasonable opportunity to elicit information within the control of his adversaries.'"  <u>In re Dana Corp.</u>, 574 F.3d at 149 (quoting <u>Quinn v. Syracuse Model Neighborhood Corp.</u>, 613 F.2d 438, 445 (2d Cir. 1980) (summary judgment should not be granted against non-dilatory party who has been "denied reasonable access to potentially favorable information")).  However, "[a] court plainly has discretion to reject a request for discovery if the evidence sought would be cumulative or if the request is based only on 'speculation as to what potentially could be discovered,' . . . and a bare assertion that the evidence supporting plaintiff's allegations is in the hands of the moving party is insufficient to justify the denial of summary judgment."  <u>In re Dana Corp.</u>, 574 F.3d at 148-49 (quoting <u>Paddington Partners v. Bouchard</u>, 34 F.3d 1132, 1137-38 (2d Cir. 1994)).

Here, Plaintiff's counsel's affirmation demonstrates that discovery, to date, has been inadequate.  Plaintiff's counsel has outlined the nature of the factual information he seeks, and it is obvious that this information is relevant to the issues raised in this litigation.  Counsel has also outlined the efforts made to obtain this information, and Defendants' lack of cooperation.[9]  Under the circumstances of this case, this is an adequate showing under Rule 56(f).

_____

[9]  Defendants do not address Plaintiff's complaints about the deficiencies in their production, except to say that Plaintiff could have sought additional discovery during the six-week extension the Court granted Plaintiff to file his opposition to Defendants' motion.  (Def. Reply Br. 9)  Defendants' failure to demonstrate that they have met their discovery obligations under the Federal Rules provides another basis for denying their motion.  <u>See</u>, <u>e.g.</u>, <u>Smith v. City of Jackson</u>, 351 F.3d 183, 198 (5th Cir. 2003) ("If the defendants did not comply with their discovery obligations such that the plaintiffs were prohibited from presenting their best case to the district court, summary judgment in

Defendants argue that Plaintiff has failed to meet Rule 56(f)'s requirements, however, because he "fails to explain how any deposition or additional documents could materially impact his own admissions." (Def. Reply Br. 9) It is obvious to the Court that deposition testimony from, for example, Plaintiff's supervisor[10] and co-workers, and additional document discovery from Rite Aid, could shed light on the material issues of fact discussed above.[11] While Plaintiff testified at his deposition that he performed many duties that are exempt, this testimony is not – for the reasons already discussed – dispositive of the issues in this litigation.

Under similar circumstances, other courts have determined that a summary judgment motion must be denied. Clougher v. Home Depot U.S.A., Inc. is instructive in this regard. In Clougher, the defendant moved for summary judgment arguing that

---

favor of the defendants improperly denied the plaintiffs an opportunity to continue discovery and supplement the record." (citing Sunbelt Sav., FSB v. Montross, 923 F.2d 353, 357, 358 (5th Cir. 1991) (holding that summary judgment was premature when discovery was still pending)); Quinn, 613 F.2d at 445 (summary judgment should not be granted against a non-dilatory party who has been "denied reasonable access to potentially favorable information").

[10] Given Plaintiff's assertion that Offor told him that he and his assistant manager must complete work left undone by non-exempt employees, and the Company's alleged prohibition on the payment of overtime wages to non-exempt workers, it is apparent that Offor's deposition should be part of the record before this Court.

[11] Defendants contend that because Plaintiff was granted a six-week extension to respond to Defendants' motion, he had "ample opportunity, with full knowledge of Defendants' Motion, to seek additional discovery he deemed necessary." (Def. Reply Br. 9) The discovery schedule in this action is determined by this Court's scheduling order, however, and not by when Defendants choose to file a summary judgment motion. Here, the Court's original scheduling order provided for a fact discovery deadline of October 9, 2009 – four months after Defendants served their motion. Pursuant to the parties' agreement and applications to this Court, that deadline was ultimately extended to April 8, 2010. Plaintiff is entitled to rely on that deadline, and not be held to an artificial deadline created by Defendants' filing of a premature summary judgment motion.

plaintiff – an assistant manager at Home Depot – was properly classified as an exempt employee. Clougher, 2010 U.S. Dist. LEXIS 24238, at *2. The court denied the motion, finding that the record there – which was much more robust than the record before this Court – was inadequate:

> [F]ar from a comprehensive record of [plaintiff's] managerial activity, Home Depot cobbles together bits and pieces of [plaintiff's] four-and-a-half year . . . employment history from his deposition in this case. . . . Home Depot puts forth no affidavits or deposition testimony from [plaintiff's] supervisors, . . . nor is there any evidence from any other assistant store manager or MASM at either location; nor even from any of the hundreds of hourly-wage employees that no doubt worked at those locations between 1999 and 2005. Cf. Big Lots, 604 F. Supp. 2d at 907 (relying upon testimony from up to seven witnesses per case, including supervisors, assistant supervisors and subordinate co-workers). In sum, Home Depot fails to put forth any corroborating evidence from any relevant and available witness other than [plaintiff]. The material disputes of fact resulting from the undeveloped summary judgment record become manifest in even the most cursory "primary duty" analysis. . . .

Id. at *14-15; see also Posely v. Eckerd Corp., 433 F. Supp. 2d 1287, 1291 (S.D. Fla. 2006) (granting summary judgment on plaintiff's overtime claim only after the court had "stayed. . .summary judgment motion" for more than a year "affording Plaintiffs an opportunity to review outstanding discovery and perhaps supplement the information provided in their summary judgment papers").

As in Clougher, Plaintiff's deposition, standing alone, does not provide a sufficient factual basis for granting summary judgment given (1) material issues of fact that have already arisen concerning, inter alia, the amount of time Plaintiff spent performing non-exempt duties, his scheduling responsibilities, and his discretion in performing non-exempt work; and (2) Plaintiff's showing that there are many other as yet untapped sources of information concerning Plaintiffs' duties and responsibilities, including, inter alia, corporate records relating to Plaintiff's store and the labor budget,

records relating to the classification of certain Rite Aid managers as non-exempt, and

testimony from Plaintiff's supervisors and co-workers.[12]

---

[12] The vast majority of cases Defendants cite for the proposition that Plaintiff was properly classified under the executive exemption (Def Br. 10-13) are readily distinguishable, because the courts in those cases made that determination upon a fully developed factual record, after discovery had closed, and often where a supervisor's deposition was part of the record. See Donovan v. Burger King Corp., 675 F.2d 516 (2d Cir. 1982), aff'g, Marshall v. Burger King Corp., 504 F. Supp. 404 (E.D.N.Y. 1980) (evaluating overtime claims of assistant store managers based upon substantial trial testimony); Donovan v. Burger King Corp., 672 F. 2d 221, 223 (1st Cir. 1982) (vacating and remanding in part the district court's findings made after a bench trial); Posely, 433 F. Supp. 2d at 1291 (granting summary judgment on plaintiff's overtime claim only after the court had "stayed. . .summary judgment motion" for more than a year "affording Plaintiffs an opportunity to review outstanding discovery and perhaps supplement the information provided in their summary judgment papers"); Lovelady v. Allsup's Convenience Stores, Inc., 304 F. App'x 301, 303-304 (5th Cir. 2008) (per curiam) (unpublished opinion), aff'g, Lovelady v. Allsup's Convenience Stores, Inc., No. 07 Civ. 00130 (N.D. Tx. 2008) (granting summary judgment where motion was filed on same date that discovery was scheduled to be completed, see 07 Civ. 00130 Docket Nos. 11 (Aug. 2. 2007 Order Rule 16 Scheduling Order), 35 (Feb. 4, 2008, Def. Motion for Summary Judgment)); Thomas v. Speedway Super America, LLC, 506 F.3d 496 (6th Cir. 2007), aff'g, Thomas v. Speedway Super America, LLC., No. 04 Civ. 00147, 2006 U.S. Dist. LEXIS 15005 (S.D. Ohio Mar. 30, 2006) (granting summary judgment where motion was filed after discovery had already closed, see No. 04 Civ. 00147 Docket Nos. 7 (Jun. 30, 2004 Preliminary Pretrial Order), 51 (Aug. 1 2005, Def. Motion for Summary Judgment)); Jones v. Virginia Oil Co., 69 F. App'x 633, 636 (4th Cir. 2003) (unpublished opinion) (affirming district court's dismissal of plaintiffs' FLSA overtime claim where defendant had moved for summary judgment "after discovery"); Moore v. Tractor Supply Co., 352 F. Supp. 2d 1268, 1275-77(dismissing plaintiff manager's FLSA claim based in part on documentary evidence concerning manager's role and functions and deposition testimony from plaintiff's district manager and regional manager); Murray v. Stuckey's, Inc., 939 F.2d 614 (8th Cir. 1991) (reversing district court's finding that store managers' primary duties were managerial after district court had conducted bench trial); Meyer v. Worsley Cos., Inc., 881 F. Supp. 1014, 1019 (E.D.N.C. 1994) (granting defendant's motion for summary judgment on plaintiff store manager's FLSA overtime claim based in part on deposition testimony of plaintiff's area supervisor);cf. Big Lots, 604 F. Supp. 2d at 907 (relying upon 43 hours of trial testimony concerning the defendant's operations, and additional trial testimony concerning daily activities of the individual assistant manager plaintiffs, including testimony from up to seven witnesses per case, in determining whether plaintiff fell under executive exemption of FLSA).

Accordingly, Defendants' motion for partial summary judgment as to Plaintiffs' FLSA overtime compensation claim will be denied without prejudice to renewal at the close of discovery.

**B.    Retaliation Claims**

Defendants have moved for summary judgment on Plaintiff's FLSA and NYLL retaliation claims, arguing that Plaintiff cannot recover because he never filed a formal complaint regarding FLSA violations and never specifically informed his supervisors of NYLL violations.  (Def. Br. 17-18)  Plaintiff has not addressed this argument in his brief, and therefore the claims are deemed abandoned and will be dismissed.  See Grana v. Potter, No. 06 Civ. 1173 (JFB)(ARL), 2009 WL 425913, at *15 (E.D.N.Y. Feb. 19, 2009) (dismissing plaintiff's claim as abandoned where summary judgment opposition "contained no factual or legal discussion" of the claim); Bronx Chrysler Plymouth, Inc. v. Chrysler Corp., 212 F. Supp. 2d 233, 249 (S.D.N.Y. 2002) (dismissing claim as abandoned where party opposing summary judgment "made no argument in support of th[e] claim at all" in its summary judgment opposition papers); Douglas v. Victor Capital Group, 21 F. Supp. 2d 379, 393 (S.D.N.Y. 1998) (dismissing as abandoned claims that defendants addressed in motion for summary judgment but plaintiff failed to address in his opposition papers).

**C.    Claim to Injunctive Relief**

In the Complaint, Plaintiff seeks an order "[e]njoin[ing] Defendants from further violations of the FLSA and New York Labor Law."  (Amended Cmplt. ¶ 81)  It is not clear whether Plaintiff – in seeking injunctive relief – is invoking the overtime compensation provisions or the retaliation provisions of these two statutes.  See 29 U.S.C. §215(a)(3); N.Y. Lab. Law § 215(1).

Defendants contend that Plaintiff cannot seek injunctive relief because (1) he is a former employee facing no risk of imminent harm, and (2) "an action for injunctive relief under the FLSA rests exclusively with the United States Secretary of Labor." (Def. Br. 19). Plaintiff does not contest Defendants' former employee argument, but notes that he seeks to certify an FLSA collective action class and a Rule 23 class that will include current employees, and that accordingly injunctive relief may be appropriate. (Pltf. Br. 25) Plaintiff asks this Court to defer consideration of the injunctive relief issue pending determination of whether this action should be certified as an FLSA collective action and a Rule 23 class action. (Id.)

Under the FLSA, an employer who fails to pay required overtime wages "shall be liable to the employee or employees affected in the amount of their . . . unpaid overtime compensation . . . and in an additional equal amount as liquidated damages." 29 U.S.C. 216(b). "An injunction is not an available remedy in an action brought by employees under the FLSA for failure to pay . . . overtime compensation[, however]." Ruggles v. Wellpoint, Inc., 253 F.R.D. 61, 68 (N.D.N.Y 2008) (citing 29 U.S.C. § 216(b)). Instead, "FLSA § 217 provides that the Secretary of Labor may file an action to enjoin an employer from violating the FLSA, including minimum wage and overtime compensation provisions." Id. (citing 29 U.S.C. § 217); see also Powell v. Florida, 132 F.3d 677, 678 (11th Cir. 1998) (per curiam) ("[T]he right to bring an action for injunctive relief under the [FLSA] rests exclusively with the United States Secretary of Labor.").

Accordingly, to the extent that Plaintiff seeks injunctive relief under the substantive overtime provisions of the FLSA, such equitable relief is not available.[13]

With respect to Plaintiff's claim for injunctive relief pursuant to the anti-retaliation provisions of the FLSA and the NYLL, that claim will be dismissed, because Plaintiff's underlying retaliation claim under these statutes has been dismissed. To the extent that Plaintiff seeks class injunctive relief, that claim will not be dismissed at this time. At least one court has ruled that the FLSA's anti-retaliation provision creates a private cause of action, and that employees may seek injunctive relief under this provision. See, e.g., Bailey v. Gulf Coast Transp., Inc., 280 F.3d 1333, 1337 (11th Cir. 2002) ("[T]he FLSA permits employees to obtain preliminary injunctive relief to address violations of the Act's antiretaliation provision"). With respect to the NYLL, Defendants have not argued that private plaintiffs are barred from seeking injunctive relief.

## CONCLUSION

For the reasons stated above, Defendants' motion for partial summary judgment is GRANTED IN PART and DENIED IN PART. Plaintiff's FLSA and NYLL

---

[13] See Ruggles, 253 F.R.D. at 68; see also Powell, 132 F.3d at 678; Barrentine v. Arkansas-Best Freight Sys., 750 F.2d 47, 51 (8th Cir. 1984) ("[O]nly the Secretary is vested with the authority to seek an injunction"); Morelock v. NCR Corp., 546 F.2d 682, 688 (6th Cir. 1976), rev'd on other grounds, 435 U.S. 911 (1978) ("Individuals are limited to seeking legal remedies and are precluded from obtaining injunctive relief."); Powell v. Washington Post Co., 267 F.2d 651, 652 (D.C. Cir. 1959) ("In so far as plaintiff's prayer relates to action by the Secretary to restrain violations, the answer is that the appeal is to his discretion."); Roberg v. Phipps Estate, 156 F.2d 958, 963 (2d Cir. 1946) ("The Administrator has exclusive authority to bring such an [injunction] action."); Bowe v. Judson C. Burns Inc., 137 F.2d 37, 39 (3d Cir. 1943) ("We think it is plain from the language that the right of the administrator to bring an action for injunctive relief is an exclusive right.").

retaliation claims are dismissed, as are Plaintiff's personal claims for injunctive relief.

Rite Aid's motion for partial summary judgment is otherwise DENIED.

The Clerk of the Court is directed to terminate the motion. [Docket No. 71]

Dated: New York, New York
       March 31, 2010

                                        SO ORDERED.

                                        _____
                                        Paul G. Gardephe
                                        United States District Judge