UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

YATRAM INDERGIT, on behalf of
himself and all others similarly situated,

             Plaintiff,

    -against-

RITE AID CORPORATION, RITE AID
OF NEW YORK, INC., and FRANCIS
OFFOR as Aider & Abettor,

             Defendants.

ANGEL NAULA and JOSE FERMIN, on
behalf of themselves and all others
similarly situated,

             Plaintiffs,

    -against-

RITE AID OF NEW YORK d/b/a RITE
AID, RITE AID CORPORATION and
JOHN DOES 1 through 100, inclusive,

             Defendants.

**MEMORANDUM OPINION**

08 Civ. 9361 (PGG)

08 Civ. 11364 (PGG)

PAUL G. GARDEPHE, U.S.D.J.:

        In this putative collective and class action[1], Plaintiff Yatram Indergit

asserts claims under the Fair Labor Standards Act ("FLSA"), 29 U.S.C. §§ 201 et seq.,

and the New York Labor Law ("NYLL"), §§ 650 et seq., on behalf of himself and all

---

[1] On March 23, 2010, this action was consolidated with a related action – Naula v. Rite
Aid Corp. and Rite Aid of New York Inc., 08 Civ. 11364 (PGG) (S.D.N.Y.) – for all
purposes. (Docket No. 91)  The Naula plaintiffs assert New York Labor Law claims for
overtime compensation on behalf of all similarly situated Rite Aid managers and assistant
managers. The Naula plaintiffs do not assert claims under the FLSA.

others similarly situated, for failure to pay overtime compensation. Plaintiff also asserts individual claims for age discrimination under the Age Discrimination in Employment Act, 29 U.S.C. §§ 621 et seq. ("ADEA"), the New York State Human Rights Law, Executive Law §§ 290 et seq. ("NYSHRL"), and the New York City Human Rights Law, N.Y.C. Admin. Code §§ 8-107 et seq. ("NYCHRL"), and for retaliation under the NYLL and FLSA.[2] Plaintiff seeks, for himself and others similarly situated, monetary damages and injunctive relief.

In an order dated March 31, 2010, this Court granted Indergit's motion for court-authorized notice to potential opt-in plaintiffs pursuant to 29 U.S.C. § 216(b)[3], indicating that a written opinion would follow.[4] (Docket No. 93 ("March 31, 2010 Order")).

---

[2] Indergit's retaliation claims were dismissed on March 31, 2010. Indergit v. Rite Aid Corp., No. 08 Civ. 9361 (PGG), 2010 U.S. Dist. LEXIS 32322, at *40-41 (S.D.N.Y. Mar. 31, 2010).

[3] Indergit styled his motion as one for "conditional certification." (Docket No. 56) "In contrast to the procedural requirements set forth in Rule 23 of the Federal Rules of Civil Procedure for class actions . . . neither the FLSA nor the Federal Rules of Civil Procedure provide for the certification of an FLSA collective action." Amendola v. Bristol-Myers Squibb Co., 558 F. Supp. 2d 459, 463 n.1 (S.D.N.Y. 2008). Accordingly, this Court has treated Indergit's motion for "conditional certification" as a request for court-authorized notice. See id. ("This Opinion will treat Amendola's motion as a request for authorization of notice and will not further refer to the motion as one for certification.").

[4] The March 31, 2010 order authorized notice to

> [a]ll individuals classified as exempt from the FLSA's overtime pay provisions and employed as salaried Store Managers during any workweek within the previous three years from the date of this Order in any of the stores identified in Rite Aid Corporation's last published Annual Report as being operated by Rite Aid Corporation, or any store being operated by Rite Aid's subsidiary Rite Aid of New York, Inc.

## BACKGROUND

On October 31, 2008, Indergit brought suit on behalf of himself and others similarly situated against his former employer, Rite Aid Corporation and Rite Aid of New York (collectively "Rite Aid"), alleging that Rite Aid had failed to pay him, other store managers, and assistant managers overtime wages in violation of the FLSA and NYLL. Rite Aid hired Indergit as a store manager in 1979, and he went on to spend most of his professional career working at a Rite Aid store in the Bronx, New York. (Amended Cmplt. ¶ 45) On November 30, 2007, Rite Aid terminated Indergit's employment. (Id.)

Indergit's Amended Complaint includes, inter alia, a collective action claim under the FLSA and a class action claim based on alleged violations of the NYLL. (Id. ¶¶ 57-77) The FLSA claim is based on Rite Aid's failure to pay overtime compensation to its store managers, while the NYLL claim is based on Rite Aid's failure to pay overtime compensation to both its store managers and assistant store managers.[5]

The core allegation of the Amended Complaint is that Rite Aid misclassified Indergit and other store managers as executive employees who were exempt from the FLSA's overtime provisions when, in fact, they were performing primarily non-managerial work and were entitled to overtime pay. (Id. ¶¶ 13, 35-40, 42) Indergit claims that Rite Aid – as part of a corporate nationwide program to reduce the amount of overtime compensation paid to non-exempt employees – has a policy of requiring its store managers to work overtime to perform the duties of non-exempt employees, such as

March 31, 2010 Order at 2.

[5] Indergit originally asserted a collective action claim under the FLSA for both store managers and assistant store managers, but in a December 9, 2009 letter he withdrew his FLSA claim as to assistant managers. (Docket No. 90 (Dec. 9, 2009 Vagnini Ltr.)).

cashiers and stock handlers. (Id. ¶¶ 37, 38)  The Amended Complaint alleges that store

managers are required "to work up to 80 hours a week and/or six or seven days a week"

in order to "make up all the hours previously worked by non-exempt employees."[6]  (Id. ¶

38)

Rite Aid previously moved for summary judgment on Indergit's FLSA

overtime compensation claim, arguing that he plainly fell under the "bona fide executive

exemption" to the FLSA and had been properly classified.  Rejecting these arguments as

premature, this Court denied Rite Aid's motion on March 31, 2010.  See generally

Indergit v. Rite Aid Corp., No. 08 Civ. 9361 (PGG), 2010 U.S. Dist. LEXIS 32322

(S.D.N.Y. Mar. 31, 2010).

**DISCUSSION**

Rite Aid argues that Indergit has not shown "that he, as a Store Manager

. . . is similarly situated to the approximately 8,400 current and former [Store Managers]

. . . employed by subsidiaries of Rite Aid," and that accordingly he has failed to establish

a "prerequisite for conditional certification."  (Def. Br. 1)  Indergit, however, contends

that "all of the Collective Plaintiffs suffered from Defendants' illegal practice of failing

to pay overtime" and that all salaried Store Managers "were. . .victims of Defendants'

policy[,] which sought to raise profits by decreasing the hours worked by hourly

employees and transferring their job duties to Management."  (Pltf. Br. 1) (emphasis in

original).  Indergit contends that Rite Aid consistently reduced the number of work hours

he was allowed to assign to hourly employees and that "[a]s he decreased the hours

---

[6]  As of August 2009, two Rite Aid store managers had joined this action as party
plaintiffs pursuant to the FLSA's opt-in provision, 29 U.S.C. § 216(b).  (Docket Nos. 38,
66).

worked by non-exempt employees, in accordance with this national policy, Plaintiff, along with his assistant managers, had no choice but to perform those tasks formerly being performed by those non-exempt employees." (Pltf. Br. 2) According to Indergit, the overtime hours he worked each week were "spent not on managerial work" but rather "almost completely [on] menial tasks that are not exempt from overtime laws." (Pltf. Br. 2) Similarly, opt-in Plaintiff Neil Rand, who served as a store manager from June 1996 to February 2006 (Rand Aff. ¶ 1), alleges that he spent about one hour a day performing managerial work during his fifty-five to sixty hour work week, and that the rest of his time was spent performing "menial jobs around the store that should have been completed by hourly employees, not Management." (Pltf. Br. 3 (citing Rand Aff. ¶ 3)). Indergit alleges that all store managers were victims of a common national Rite Aid policy because "all policies which relate to the individual stores and management are produced on a national level with oversight from District and Regional management." (Pltf. Br. 4)

## I.  THE EXECUTIVE EXEMPTION

The FLSA requires that employers pay their employees time-and-a-half after the employee has worked more than 40 hours during a work week. 29 U.S.C. § 207(a)(1). Employers do not have to pay time-and-a-half, however, to individuals "employed in a bona fide executive, administrative, or professional capacity." 29 U.S.C. § 213(a)(1).

Congress did not further define these exemptions in the FLSA, but instead delegated this responsibility to the Department of Labor. Because the executive exemption is an affirmative defense to overtime pay claims, the employer bears the

burden of proving that a plaintiff has been properly classified as an exempt employee.

See Corning Glass Works v. Brennan, 417 U.S. 188, 196-97 (1974); Clougher v. Home

Depot U.S.A., Inc., No. 06 Civ. 5474 (RRM), 2010 U.S. Dist. LEXIS 24238, at *9-10 n.4

(E.D.N.Y. Mar. 11, 2010) ("In the context of overtime wage claims . . . application of the

'executive exemption' is an affirmative defense, which any defendant employer bears the

burden of proving by a preponderance of the evidence." (citing Bilyou v. Dutchess Beer

Distribs., Inc., 300 F.3d 217, 222 (2d Cir. 2002)).  "[B]ecause the FLSA is a remedial act,

its exemptions, such as the 'bona fide executive' exemption . . . are to be narrowly

construed."  Martin v. Malcolm Pirnie, Inc., 949 F.2d 611, 614 (2d Cir. 1991).

Department of Labor regulations set forth the following requirements for

application of the executive exemption:

> (1) [The employee is] [c]ompensated on a salary basis at a rate of not less
> than $455 per week (or $ 380 per week, if employed in American Samoa
> by employers other than the Federal Government), exclusive of board,
> lodging or other facilities;
>
> (2) [The employee's] primary duty is management of the enterprise in
> which the employee is employed or of a customarily recognized
> department or subdivision thereof;
>
> (3) [The employee] customarily and regularly directs the work of two or
> more other employees; and
>
> (4) [The employee] has the authority to hire or fire other employees or [the
> employee's] suggestions and recommendations as to the hiring, firing,
> advancement, promotion or any other change of status of other employees
> are given particular weight.

29 C.F.R. § 541.100(a).

## II.     COLLECTIVE ACTIONS AND COURT-AUTHORIZED NOTICE

### A.     Legal Standard for Obtaining Court-Authorized Notice

Under the FLSA, an employee may sue on behalf of himself and all other employees who are "similarly situated." 29 U.S.C. § 216(b).  The FLSA permits those similarly situated employees to "opt in" to the litigation and become party plaintiffs by filing a written consent form with the Court. See Damassia v. Duane Reade Inc., No. 04 Civ. 8819 (GEL), 2006 U.S. Dist. LEXIS 73090, at *7 (S.D.N.Y. Oct. 5, 2006) (citing Masson v. Ecolab, Inc., No. 04 Civ. 4488 (MBM), 2005 WL 2000133, at *13 (S.D.N.Y. Aug. 17, 2005)).  In contrast to the procedures for a class action under Fed. R. Civ. P. 23, "only plaintiffs who affirmatively opt in can benefit from the judgment or be bound by it."  Damassia, 2006 U.S. Dist. LEXIS 73090, at *7 (citing Gjurovich v. Emmanuel's Marketplace, Inc., 282 F. Supp. 2d 101, 103-04 (S.D.N.Y. 2003)).

Although Section 216(b) does not refer to court-authorized notice to potential opt-in plaintiffs, "it is 'well settled' that district courts have the power to authorize an FLSA plaintiff to send such notice."  Gjurovich, 282 F. Supp. 2d at 103-04 (quoting Hoffmann v. Sbarro, Inc., 982 F. Supp. 249, 260 (S.D.N.Y. 1997) (additional citations and internal quotation marks omitted)); see also Amendola, 558 F. Supp. 2d at 467 ("Thus, '[a]lthough one might read the [FLSA], by deliberate omission, as not providing for notice, . . . it makes more sense, in light of the "opt-in" provision of § 16(b) of the Act, 29 U.S.C. § 216(b), to read the statute as permitting, rather than prohibiting notice in an appropriate case.'" (quoting Braunstein v. E. Photographic Labs., Inc., 600 F. 2d 335, 336 (2d Cir. 1978) (per curiam))).

Typically, "a federal court authorizes notice of the litigation to employees after making a preliminary determination that the employees who will be receiving the notice are similarly situated to the plaintiff." Amendola, 558 F. Supp. 2d at 467 (citing Lynch v. United Servs. Auto Assn'n, 491 F. Supp. 2d 357, 368 (S.D.N.Y. 2007)). At this stage, a plaintiff need "make only a 'modest factual showing' that she and the other putative collective action members 'were victims of a common policy or plan that violated the law.'" Amendola, 558 F. Supp. 2d at 467 (quoting Realite v. Ark Restaurants Corp., 7 F. Supp. 2d 303, 306 (S.D.N.Y. 1998)). This standard is met where a plaintiff has offered "'substantial allegations' of a factual nexus between named plaintiffs and potential opt-in plaintiffs with regard to their employer's alleged FLSA violation." Davis v. Abercrombie & Fitch Co., No. 08 Civ. 1859 (PKC), 2008 U.S. Dist. LEXIS 86577, at *27 (S.D.N.Y. Oct. 22, 2008) (citing Ayers v. SGS Control Servs., Inc., No. 03 Civ. 9078 (RMB)(RLE), 2004 WL 2978296, at *5 (S.D.N.Y. Dec. 21, 2004); Mendoza v. Casa de Cambio Delgado, Inc., No. 07 Civ. 2579 (HB), 2008 WL 938584, at *2 (S.D.N.Y. Apr. 7, 2008) (noting that in order to meet the "low bar for allegations required for collective action certification," the plaintiff's complaint or affidavits must allege a factual nexus with other employees of the defendant)).

As Judge Lynch explained in Damassia v. Duane Reade, "it may be appropriate in some cases to find plaintiffs and potential plaintiffs similarly situated based simply on plaintiffs' 'substantial allegations' that they and potential plaintiffs were common victims of a FLSA violation, particularly where defendants have admitted that the actions challenged by plaintiffs reflect a company-wide policy." Damassia, 2006

U.S. Dist. LEXIS 73090, at *9 (citing <u>Ayers</u>, 2004 WL 2978296, at *5; <u>Rodolico v. Unisys Corp.</u>, 199 F.R.D. 468, 480 (E.D.N.Y. 2001)).

"[A] plaintiff's burden at this preliminary stage is 'minimal.'" <u>Damassia</u>, 2006 U.S. Dist. LEXIS 73090, at *9-10 (citing <u>Wraga v. Marble Lite, Inc.</u>, No. 05 Civ. 5038 (JG) (RER), 2006 WL 2443554, at *1-2 (E.D.N.Y. Aug. 22, 2006); <u>Kreher v. City of Atlanta</u>, No. 04 Civ. 2651 (WSD), 2006 WL 739572, at *3 (N.D. Ga. Mar. 20, 2006); <u>Lee v. ABC Carpet & Home</u>, 236 F.R.D. 193, 197 (S.D.N.Y. 2006) ("Plaintiff's burden is minimal because the determination that the parties are similarly situated is merely a preliminary one."); <u>Scholtisek v. Eldre Corp.</u>, 229 F.R.D. 381, 387 (W.D.N.Y. 2005); <u>Gjurovich</u>, 282 F. Supp. 2d at 104; <u>Young v. Cooper Cameron Corp.</u>, 229 F.R.D. 50, 55 (S.D.N.Y. 2005) (describing plaintiffs' burden as "very limited")). "A court need not evaluate the underlying merits of a plaintiff's claims to determine whether the plaintiff has made the minimal showing necessary for court-authorized notice." <u>Damassia</u>, 2006 U.S. Dist. LEXIS 73090, at *10 (citing <u>Scholtisek</u>, 229 F.R.D. at 391; <u>Gjurovich</u>, 282 F. Supp. 2d at 105; <u>Hoffmann</u>, 982 F. Supp. at 262); <u>see</u> <u>also</u> <u>Davis</u>, 2008 U.S. Dist. LEXIS 86577, at *27-28 (noting that at the stage of evaluating whether court-authorized notice is appropriate, "the court does not resolve factual disputes, decide ultimate issues on the merits, or make credibility determinations." (citing <u>Lynch</u>, 491 F.Supp.2d at 368-69)); <u>Francis v. A&E Stores, Inc.</u>, No. 06 Civ. 1638 (CS)(GAY), 2008 U.S. Dist. LEXIS 83369, at *6 (S.D.N.Y. Oct. 15, 2008) ("Plaintiffs must make 'a modest factual showing sufficient to demonstrate that they and potential plaintiffs together were victims of a common policy or plan that violated the law,' but the merits of plaintiff's claims are not

evaluated until later in the litigation." (quoting <u>Hoffmann</u>, 982 F. Supp. at 261-62 (S.D.N.Y. 1997)).

After plaintiffs have opted in and after discovery, courts conduct a more stringent "second tier" analysis upon a full record to decide whether the additional plaintiffs are similarly situated to the original plaintiffs. This exercise takes place at what is often referred to as the "decertification" stage. <u>See</u> <u>Francis</u>, 2008 U.S. Dist. LEXIS 83369, at *12 n.3 (noting that intensive factual inquiry at the initial court-authorized notice stage is "against the weight of authority" and that such analysis takes place at the decertification stage); <u>Damassia</u>, 2006 U.S. Dist. LEXIS 73090, at *11 ("Plaintiffs who opt in to a collective action after a court authorizes notice do not necessarily remain parties to the action through trial. After discovery, courts typically engage in a 'second tier' of analysis to determine on a full record – and under a more stringent standard – whether the additional plaintiffs are in fact similarly situated. . . . If the factual record reveals that the additional plaintiffs are not similarly situated to the original plaintiffs, the collective action is 'decertified,' and the claims of the opt-in plaintiffs are dismissed without prejudice." (citing <u>Lee</u>, 236 F.R.D. at 197; <u>Scholtisek</u>, 229 F.R.D. at 387)).

**B.** **<u>Analysis</u>**

As discussed below, Indergit has met his minimal burden of demonstrating that he and other Rite Aid store managers are similarly situated, that they perform similar duties, and that they have been subjected to an allegedly unlawful nationwide corporate policy of shifting the work of non-exempt workers to store managers, and then denying these managers overtime compensation under the FLSA. Indergit has satisfied his burden

through, inter alia, affidavits and Rite Aid's internal corporate documents, including its nationwide job descriptions for the store manager position.

Internal Rite Aid documents indicate that store managers are officially assigned a similar set of duties by Rite Aid's corporate headquarters. Most telling is Rite Aid's "Store Management Guide" (Vagnini Aff. Ex. K ("Rite Aid Store Management Guide")), which delineates in great detail how store managers should complete a variety of weekly tasks and includes corporate "planograms" that dictate how certain sale items must be displayed in the store. For example, the Store Management Guide provides store managers with step-by-step instructions on how to perform common tasks, such as "sales floor inspection" and "one-hour photo maintenance." (Id.)

These documents demonstrate that Rite Aid's corporate management exercises a great degree of control over the operation of retail branches. This makes it highly likely that Rite Aid store managers – whether located in New York City or elsewhere – perform similar duties. Cf. Tierno v. Rite Aid Corp., No. C 05-02520 (TEH), 2006 U.S. Dist. LEXIS 71794, at *14-16 (N.D. Cal. Aug. 31, 2006) ("Plaintiff contends that common questions will predominate in this case because Rite Aid's highly standardized chain store operation is designed to ensure that all Store Managers perform the same or substantially the same tasks. . . . Plaintiff presents evidence that, as a general matter, Rite Aid exercises a great deal of centralized control over its stores . . . with respect to just about every aspect of store operations. . . . Plaintiff presents evidence that Store Managers perform essentially the same tasks at each store. . . .").

Indergit has also offered evidence of nationwide job descriptions for the store manager position that apply across Rite Aid's regions ("East, Central, and West").

(Vagnini Aff. Ex. E (Job Description Approval Memo for national description for Store Managers Oct. 10, 2005))  The job description indicates that all store managers – across the country – have the same set of duties.  This document also indicates that the decision to classify Rite Aid store managers as exempt was made at the national level;  the job description lists the "FLSA status" as "exempt."  Therefore, it is reasonable to infer that the policy of classifying store managers across all Rite Aid regions as exempt from the FLSA's overtime requirements reflects a company-wide policy.  See Damassia, 2006 U.S. Dist. LEXIS 73090, at *9 ("[I]t may be appropriate in some cases to find plaintiffs and potential plaintiffs similarly situated based simply on plaintiffs' 'substantial allegations' that they and potential plaintiffs were common victims of a FLSA violation, particularly where defendants have admitted that the actions challenged by plaintiffs reflect a company-wide policy." (citing Ayers, 2004 WL 2978296, at *5; Rodolico v. Unisys Corp., 199 F.R.D. 468, 480 (E.D.N.Y. 2001)); Amendola, 558 F. Supp. 2d at 467 (stating that to obtain court-authorized notice plaintiff must "make only a 'modest factual showing' that she and the other putative collective action members 'were victims of a common policy or plan that violated the law'" (quoting Ark Restaurants Corp., 7 F. Supp. 2d at 306)).

Damassia involved similar allegations and similar proof.  In that case, Duane Reade assistant night managers alleged that although they had been designated "managers," they performed few managerial duties, and that Duane Reade "employed the term 'assistant manager' in an effort to evade overtime requirements under the FLSA's 'bona fide executive' exemption for salaried managerial employees."  Damassia, 2006 U.S. Dist. LEXIS 73090, at *2.  In moving for court-authorized notice, plaintiffs cited to

"official job descriptions produced by Duane Reade regarding assistant managers" and the defendant's concession that "it applies the 'bona fide executive' exemption to all assistant night managers." Id. at *14. Judge Lynch found this evidence sufficient for the plaintiffs to meet their "'minimal' burden of demonstrating entitlement to a 'preliminary' determination that they are similarly, even if not identically, situated with respect to their FLSA claims." Id. at *19; see also Chowdury v. Duane Reade, No. 06 Civ. 2295 (GEL), 2007 U.S. Dist. LEXIS 73853, at *13 (S.D.N.Y. Oct. 2, 2007) ("Moreover, Duane Reade's own job description for all assistant managers reveals that their duties and responsibilities are centrally derived, regardless of the shift they work. . . . Thus, just as court-authorized notice was appropriate in Damassia, court-authorized notice is also appropriate here, as there is no relevant distinction between the job responsibilities of any assistant store managers, whether they work during the daytime, evening or overnight." (internal quotations omitted)).

Similarly, in Francis v. A&E Stores, Inc., Judge Seibel granted a motion for court-authorized notice to the potential FLSA collective class where the plaintiff had offered evidence of the Company's written job description of the assistant store manager position and Defendant's vice-president of store operations had testified "that the duties of ASMs were 'more or less' the same at all stores." Francis, 2008 U.S. Dist. LEXIS 83369, at *7. Here, as in Francis, Indergit has offered written job descriptions that apply to all Rite Aid store managers nationwide.

In addition to corporate documentation, Indergit's affidavit and those of other store managers demonstrate that they are similarly situated. In these affidavits, Indergit and his co-workers allege that (1) they did not perform primarily managerial

duties despite their title, and (2) they were subjected to a company-wide policy depriving them of overtime pay.  (Vagnini Aff. Ex. A (April 8, 2009 Affidavit of Yatram Indergit in Support of Motion for Conditional Certification) ¶¶ 3-6; Vagnini Aff. Ex. B (April 10, 2009 Affidavit of William Johnson in Support of Motion for Conditional Certification) ¶¶ 3-8; Vagnini Aff. Ex. B (April 10, 2009 Affidavit of Neil Rand) ¶¶ 3-8).

Such proof was ruled sufficient in <u>Damassia</u> to justify court-authorized notice.  <u>See</u> <u>Damassia</u>, 2006 U.S. Dist. LEXIS 73090, at *13-14 (where plaintiffs' affidavits asserted that "(1) none of them, despite the title of their position, performed primarily managerial duties at Duane Reade stores . . . and (2) defendant, relying without basis on FLSA's 'bona fide executive' exemption . . . subjected them and other assistant night managers to a company-wide policy depriving them of overtime compensation," such evidence "more than suffice[d] to entitle plaintiffs to court-authorized notice in this case").

Similarly, in <u>Cohen v. Gerson Lehrman Group, Inc.</u>, Judge Castel relied on the complaint and plaintiff's affidavit asserting that he and "other research associates held similar responsibilities" in finding sufficient evidence to warrant court-authorized notice.  <u>See</u> <u>Cohen v. Gerson Lehrman Group, Inc.</u>, No. 09 Civ. 4352 (PKC), 2010 U.S. Dist. LEXIS 1666, at *33-34 (S.D.N.Y. Jan. 6, 2010) ("The Complaint and the [Plaintiff's] Affidavit are sufficient to warrant preliminary certification of a collective action . . . . In so concluding, I reiterate that there is a 'low bar for allegations required for collective action certification.'" (quoting <u>Mendoza</u>, 2008 WL 938584, at *2)).

Indergit, William Johnson, and Neil Rand have all submitted affidavits alleging that they were victims of a corporate-wide policy that left store managers with

fewer overtime hours in their labor budget than was necessary and forced them to

perform mainly non-exempt duties. (Vagnini Aff. Ex. A (April 8, 2009 Affidavit of

Yatram Indergit in Support of Motion for Conditional Certification) ¶¶ 3-6; Vagnini Aff.

Ex. B (April 10, 2009 Affidavit of William Johnson in Support of Motion for Conditional

Certification) ¶¶ 3-8; Vagnini Aff. Ex. B (April 10, 2009 Affidavit of Neil Rand) ¶¶ 3-8).

Indergit has also offered the complaint in <u>Naula v. Rite Aid</u>, No. 08 Civ. 11364 (PGG)

(S.D.N.Y.) (Vagnini Repl. Aff. Ex. N ("<u>Naula</u> Complaint")), in which the plaintiff store

managers allege that they were also misclassified as exempt employees, that the majority

of their duties involved non-managerial non-exempt tasks, and that Rite Aid willfully

classified them as "managers" to avoid paying overtime compensation. (<u>Naula</u>

Complaint at ¶¶ 29, 35) In light of the low standard of proof applicable to this inquiry,

Rite Aid's internal documents, the affidavits, and the allegations in the complaints are

sufficient to warrant court-authorized notice here.

Rite Aid opposes Indergit's motion with arguments about the underlying

merits of his FLSA claim. These issues will be resolved upon a full record at the

"decertification" stage, and are not appropriate for resolution now. As the <u>Francis</u> court

explained, at the notice stage,

> the Court is considering simply whether Plaintiff, a salaried [assistant
> manager], is similarly situated to other salaried [assistant managers]; it is
> not addressing whether the duties of hourly [assistant managers] are
> similar to the duties of salaried [assistant managers], which is an issue
> relating to the merits of Plaintiff's claim.

<u>Francis</u>, 2008 U.S. Dist. LEXIS 83369, at *7-8.[7]

---

[7] <u>Francis</u> involved allegations similar to those raised here: a plaintiff assistant manager
at a retail store alleged that she and other salaried assistant managers had been

15

Rite Aid argues at length that its corporate policies are not unlawful and that the decision to classify store managers under the executive exemption does not violate the FLSA. (Def. Br. 19) Rite Aid also discusses in detail various alleged admissions Indergit made during his deposition that, according to Rite Aid, demonstrate that he was properly classified as an exempt employee. The merit of the underlying FLSA claim is not the issue that a court must resolve in deciding whether to grant a motion for court-authorized notice, however. See, e.g., Davis, 2008 U.S. Dist. LEXIS 86577, at *31 (defendant's argument that plaintiffs "were properly classified as exempt because they satisfied the administrative exemption" was "misdirected to the underlying merits of this action. Resolving the question of whether plaintiffs have put forth sufficient evidence that they and potential opt-in plaintiffs are similarly situated does not require a determination of the merits of the action."); Francis, 2008 U.S. Dist. LEXIS 83369, at *6 ("Plaintiffs must make 'a modest factual showing sufficient to demonstrate that they and potential plaintiffs together were victims of a common policy or plan that violated the law,' but the merits of plaintiff's claims are not evaluated until later in the litigation." (quoting Hoffmann, 982 F. Supp. at 261-62)); Damassia, 2006 U.S. Dist. LEXIS 73090, at *15 ("In opposing court-authorized notice, defendant dedicates a substantial portion of its briefs to the misplaced argument that plaintiffs' claims fail on the merits. . . . [C]ourts need not resolve the merits in order to find plaintiffs and potential opt-in plaintiffs similarly situated for purposes of authorizing notice." (citing Scholtisek,

---

misclassified as executives under the defendant store's policy. The Francis court concluded that because the plaintiff had demonstrated that she and all other assistant store managers had "basically the same duties," this was "sufficient at this stage to meet the Plaintiff's burden – which has been described as minimal." Id. at *8 (citing Damassia, 2006 U.S. Dist. LEXIS 73090, at *9-10)).

229 F.R.D. at 391; Gjurovich, 282 F. Supp. 2d at 105; Sbarro, 982 F. Supp. at 262)).

Accordingly, the bulk of Rite Aid's arguments are entirely misplaced and irrelevant to Indergit's motion for court-authorized notice.[8]

       Rite Aid also argues that Indergit's deposition testimony and that of other store managers reveals that their daily duties were different, and that accordingly they are not similarly situated.  Rite Aid contends that store managers' duties vary because of the

---

[8]  Rite Aid relies on Holt v. Rite Aid Corp., 335 F. Supp. 2d 1265 (M.D. Ala. 2004), which also involves claims by Rite Aid store managers and assistant managers that they were misclassified under the executive exemption.  In Holt, the court denied the plaintiffs' motion for court-authorized notice.  Noting that it had been "presented with fairly extensive evidence on the issue of whether putative class members are similarly situated," the Holt court held that it was appropriate to resolve the merits of plaintiffs' FLSA claims at the notice stage.  Holt, 333 F. Supp. 2d at 1274 ("Because the issues in this case revolve around whether the day-to-day tasks of Store Managers and Assistant Managers are consistent with their designation as exempt, this court must necessarily examine evidence of the job duties actually performed by all of the Store Managers and Assistant Managers.  The court concludes in this case, therefore, that rather than rely merely on the evidence presented by the Plaintiffs, it is appropriate to examine all of the relevant evidence.").

The approach adopted in Holt has been rejected by district courts in this Circuit and will not be followed here.  See Chowdury v. Duane Reade, No. 06 Civ. 2295 (GEL), 2007 U.S. Dist. LEXIS 73853, at *8-9 (S.D.N.Y. Oct. 2, 2007) ("Defendants provide no authority for their contention that there should ever be a 'detailed' factual analysis in a pre-discovery § 216(b) determination; indeed, the authority cited by defendants stands for the contrary proposition that 'the Court applies heightened scrutiny' only to 'post-discovery' determinations, 'usually precipitated by a defendant's motion for decertification of the class,' and not by a § 216(b) motion." (quoting Torres v. Gristede's Operating Corp., No. 04 Civ. 3316, 2006 U.S. Dist. LEXIS 74039, at *23 (S.D.N.Y. Sept. 29, 2006)); Damassia, 2006 U.S. Dist. LEXIS 73090, at *12-13 ("Defendant suggests that the court should skip the initial inquiry, reasoning that discovery has already provided 'sufficient evidence' to justify a 'final' determination that plaintiffs are not similarly situated. . . . It would . . . be inappropriate to make more than a 'preliminary determination' at this time, or to require plaintiffs to meet a more stringent standard than typically applied at the early stages of litigation." (citing Prizmic v. Armour, Inc., No. 05 Civ. 2503 (DLI) (MDG), 2006 WL 1662614, at *2 (E.D.N.Y. June 12, 2006) ("Only after discovery has been completed should the Court engage in a second more heightened stage of scrutiny to determine whether the class should be decertified or the case should proceed to trial as a collective action."))).

"unique characteristics of each store," including, <u>inter alia</u>, "store size and sales volume," "total number of employees to be managed," "each store's hours of operation," "amount of customer traffic," "nature of the store's clientele," "number of truck deliveries," "whether the store employs a cleaning crew," and "physical differences of stores, such as whether the store has a loading dock."  (Def. Br. 8)

That these factors vary from store to store provides no basis for denying Indergit's motion.  Indeed, in <u>Damassia</u>, Duane Reade advanced the same arguments, which were squarely rejected.  In that case, Duane Reade argued that plaintiffs' motion for court-authorized notice should be denied because testimony had revealed "that trucks made deliveries during some of plaintiffs' shifts but not during other plaintiffs' shifts," "that some plaintiffs, took breaks more often than others," "that some plaintiffs had authority to arrange store displays, while others did not," and "that there was variation among the stores at which plaintiffs worked with respect to the stores' location, their layout, their hours of operation, the amount of customer traffic, the amount of office space, the number of 'RF guns' used for inventory, the amount of money in the safe, the location of cigarette cartons, and the frequency with which outside cleaning crews visited the store."  <u>Damassia</u>, 2006 U.S. Dist. LEXIS 73090, at *21-22.  In ruling that such differences were insufficient to defeat a motion for court-authorized notice, Judge Lynch reasoned as follows:

> [s]uch differences are hardly relevant to whether plaintiffs and potential opt-in plaintiffs were common victims of an illegal application of the "bona fide executive" exemption to overtime compensation requirements. On defendant's logic, no group of opt-in plaintiffs would ever be "similarly situated" unless they were clones of one another working in completely identical stores, in identical neighborhoods, with identical clientele.

Id. at * 21.

Judge Lynch's logic in Damassia applies with equal force here. Indergit is not required to demonstrate at this early stage that his duties were identical to those of all other store managers. Instead, he must show that he was similarly situated to other store managers with respect to the claimed violation of the FLSA. See Damassia, 2006 U.S. Dist. LEXIS 73090, at *18-19 ("[T]he question at this early stage is only whether, applying a 'lenient' standard, the court is satisfied that plaintiffs, through their allegations, affidavits, and other evidence, have met their 'minimal' burden of demonstrating entitlement to a 'preliminary' determination that they are similarly, even if not identically, situated with respect to their FLSA claims." (emphasis added)); see also Chowdury, 2007 U.S. Dist. LEXIS 73853, at *15-16 ("Defendants cannot defeat a § 216(b) motion simply by pointing out all the ways in which plaintiff's exact day-to-day tasks differ from those of the opt-in plaintiffs; instead, defendants must show that plaintiffs are not similarly situated in ways relevant to their entitlement to overtime compensation under FLSA, which defendants have not done." (emphasis in original)); Wilks v. Pep Boys, No. 3:02-0837, 2006 U.S. Dist. LEXIS 69537, at *19 (M.D. Tenn. Sept. 26, 2006) ("[D]efendant has devoted significant attention to pointing out differences among the plaintiffs in terms of their stores . . . departments . . . managers; regions and districts. . . . Regardless of these acknowledged differences, however, each of the plaintiffs asserts a common claim . . . that . . . defendant failed to compensate him or her for hours worked and . . . violated the FLSA." (quotations omitted)).

Finally, Rite Aid contends that "collective adjudication should be denied as unmanageable and inefficient." (Def. Br. 21) Rite Aid argues that determining an

employee's exempt status under the executive exemption "requires an analysis of each individual's daily job duties," and that because this is a fact-intensive inquiry, this type of FLSA claim cannot be the subject of an FLSA collective action.  (Def. Br. 22 (emphasis in original))  This argument ignores the purposes of the FLSA.

The FLSA envisions a collective action process in which claims of similarly situated workers are adjudicated collectively rather than individually.  See, e.g., Hoffman La Roche Inc. v. Sperling, 493 U.S. 165, 170 (1989) (noting that the purpose of a collective action is to "allow[] … plaintiffs the advantage of lower individual costs to vindicate rights by the pooling of resources").  If this Court were to credit Rite Aid's argument, no FLSA action that is premised upon an alleged misclassification under the executive exemption could be resolved through the collective action process, thereby defeating the stated purpose of the FLSA and wasting judicial resources by requiring courts to consider each individual plaintiff's claims in a separate lawsuit.  See Nerland v. Caribou Coffee Co., 564 F. Supp. 2d 1010, 1025-26 (D. Minn. 2007) (Report & Recommendation adopted by District Court) ("[T]he effect of a court order directing the decertification of the conditional  class in this case would be a dismissal of all of the opt-in plaintiffs without prejudice, placing each opt-in plaintiff back at square one, without the benefit of pooled resources, and presenting the Court with almost three hundred separate lawsuits to resolve the same question of whether Caribou's exemption classification of all of its store managers was proper.  This result contravenes the policy behind collective actions under section 216(b) of the FLSA. . . . The Court concludes that a requirement that each plaintiff prove his or her claim of misclassification individually would waste more judicial time and resources than trying plaintiffs' cases individually

would preserve." (citing <u>Wilks</u>, 2006 U.S. Dist. LEXIS 69537, at *25 ("[B]ecause a collective action will allow the defendant adequate opportunity to defend itself against the plaintiffs' allegations, its purported need to confront each plaintiff individually does not defeat the propriety of collective treatment."))).

Rite Aid cites no authority for its sweeping proposition that any case that turns on the application of the FLSA's executive exemption cannot be resolved through a collection action, and many courts have expressly rejected this argument. <u>See</u>, <u>e.g.</u>, <u>Torres</u>, 2006 U.S. Dist. LEXIS 74039, at *34 & n.9 (granting motion for court-authorized notice where "plaintiffs ha[d] amply shown that they 'were . . . subject to a common practice or scheme' that violated the law" and concluding that "issues related to potential disparate factual and employment settings do not defeat Plaintiffs' valid basis for moving forward with collective action" (quoting <u>Scholtisek</u>, 229 F.R.D. at 390); rejecting defendants' argument that case should not be adjudicated as collective action due to "differences in job responsibilities [that] make it impossible for Plaintiffs to show that they and the FLSA class members are similarly situated. . . ."); <u>Nerland</u>, 564 F. Supp. 2d at 1025-26 ("For many plaintiffs, a collective action is the only practical method of adjudicating their FLSA claims. Each plaintiff in this case contends Caribou improperly classified him or her under the executive exemption of the FLSA, and that a denial of overtime compensation resulted. The evidence presented by plaintiffs indicates Caribou made its decision concerning the exemption status of its store managers on the basis of generalized evidence of store managers' job duties and responsibilities. Plaintiffs have sufficiently demonstrated the existence of common proof from which a jury could properly consider the misclassification claims plaintiffs raise, and have demonstrated the

effectiveness and sufficiency of the utilization of representative evidence in undertaking that collective examination."); Wang v. Chinese Daily News, Inc., 231 F.R.D. 602, 614 (C.D. Cal. 2005) (in context of Fed. R. Civ. P. 23 class certification motion, court noted that "[d]efendant cannot, on the one hand, argue that all [of the employees in the position] at issue are exempt from overtime wages and, on the other hand, argue that the Court must inquire into the job duties of each [class member] in order to determine whether that individual is exempt"); cf. Torres, 2006 U.S. Dist. LEXIS 74039, at *35 n.10 ("Even if defendants were to raise 'highly individualized defenses,' the Court may grant collective action and bifurcate trial, as necessary, to address those defenses." (citing Thiessen v. General Elec. Capital Corp., 267 F.3d 1095, 1106  (S.D.N.Y. 2006)).

Rite Aid argues that "[t]he lack of common proof inevitably means that collective action members' claims [will] be won or lost based on the individualized and anecdotal recollections of individual employees." (Def. Br. 23)  This argument, however, ignores that evidence already introduced indicates that such common proof exists and is likely to be highly probative concerning the merits of Indergit's FLSA claim.  In briefing this motion, Indergit has cited corporate documents indicating that store managers had similar duties, that decisions regarding the content of their job descriptions and their classification as exempt from the FLSA were made at the national corporate level, and that Rite Aid maintained a high degree of control over its store managers' daily tasks through nationwide corporate policies and procedures.

This Court's conclusion that Rite Aid's store managers are similarly situated and that Indergit has made the showing necessary to justify court-authorized notice is consistent with the decisions of other courts addressing similar allegations by

Rite Aid store managers and assistant managers. See, e.g., Craig v. Rite Aid, No. 08 Civ. 2317, 2009 U.S. Dist. LEXIS 114785, at *13 (M.D. Pa. Dec. 9, 2009) (granting Rite Aid assistant store managers' motion for nationwide court-authorized notice where plaintiffs alleged that they were misclassified under the executive exemption); Tierno, 2006 U.S. Dist. LEXIS 71794, at *13-19 (granting Fed. R. Civ. P. 23 class certification motion for claims asserted pursuant to California Labor Code where plaintiff alleged that "Rite Aid Store Managers do not in fact . . . meet the criteria for being classified as 'exempt' management employees under California law" due to the fact that, inter alia, "Rite Aid exercises a great deal of centralized control over its stores. . .with respect to just about every aspect of store operations," "Store Managers perform essentially the same tasks at each store," and "Rite Aid fosters homogeneity in the Store Manager's job duties, and the manner in which they are performed, by utilizing a system of close supervision by District Managers").

## CONCLUSION

For these reasons, Indergit's motion for court-authorized notice was GRANTED in this Court's March 31, 2010 Order.

Dated: New York, New York
June 15, 2010

SO ORDERED.

Paul G. Gardephe
United States District Judge